UNITED STATES of America, Appellee,

v.

George M. OPPON, Jr.,
Defendant, Appellant.

No. 88–1007.

United States Court of Appeals,
First Circuit.

Heard June 7, 1988.

Decided Dec. 13, 1988.

E. Paul Eggert with whom Mittel & Hefferan, was on brief for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and David R. Collins, Asst. U.S. Atty., were on brief for appellee.

Before COFFIN and BREYER,
Circuit Judges, and ACOSTA,* District
Judge.

ACOSTA, District Judge.

Appellant George M. Oppon, Jr. ("appellant") was convicted in the United States District Court for the District of Maine on charges of harboring illegal aliens Spurgeon Cope ("Cope") and Megel Mcaulay

* Of the District of Puerto Rico, sitting by designation.

("Mcaulay") (Counts I and II of the indictment); presenting two social security numbers for the purpose of obtaining employment that had not been validly assigned (Counts III and IV); and falsely representing himself to be a United States citizen (Count V). The government charged that appellant induced Cope and Mcaulay to leave the farm where they were legally employed as immigrant farm workers, found them a place to live, and helped them to apply for jobs by, *inter alia*, writing false social security numbers on employment applications submitted under their names. In the process of applying for a job himself, appellant also falsely represented that he was a United States citizen. After a three-day trial, the jury returned a verdict of guilty as to all counts. We affirm the conviction.

## THE FACTS

The record before us reflects that appellant is a citizen of Ghana who first visited the United States as a tourist in 1977. He again travelled to this country in 1979, at which time he enrolled as a student at Columbia University. His studies were cut short, however, when the government of Ghana discontinued its exchange with United States currency leaving appellant without financial support from his homeland. Yet, appellant remained in this country, married, and held a variety of jobs.

On September 2, 1986, Cope, Mcaulay and a group of 26 other men arrived in the United States from their native Jamaica to work as agricultural laborers at an apple farm near Livermore, Maine, pursuant to contracts permitted under our immigration laws. Sometime during the month of September, appellant befriended the two Jamaicans and promised to help them find work, a home, and "a woman" if they left the farm. Cope and Mcaulay were aware that leaving the farm would classify them as illegal aliens. Yet, on October 5, 1986, they rode with appellant from the farm to the city of Auburn, Maine, where appellant rented an apartment in his own name for Cope and Mcaulay to live in and collected money from them to defray the cost.

Appellant also took Cope and Mcaulay with him to search for jobs. Cope and Mcaulay were unable to write but they could sign their names. Consequently, during the job search appellant would complete employment applications for all three and pass to the Jamaicans their respective forms for them to sign and to deliver to potential employers. The forms submitted under Cope's and Mcaulay's names bore two purported social security numbers that had never been validly assigned to anyone. The testimony at trial indicated that it was appellant who provided the false numbers, and a handwriting expert identified appellant's handwriting in at least one application submitted under Mcaulay's name.

The testimony also showed that appellant had never become a citizen of this country but nonetheless identified himself as such in a Maine Department of Labor form 500A (application for state unemployment benefits) filed on November 2, 1986.[1] Further, appellant checked the box answering "Yes" to the question of whether or not he was a United States citizen.

In his own defense, appellant testified that he picked up a group of black male hitchhikers one day while driving along the Maine countryside and befriended them. He admitted filling out employment applications for them but said that he only wrote the information provided by them and was unaware that they were illegal aliens. He also denied having checked the U.S. citizenship box in the Maine Department of Labor form 500A.

The jury drew its own conclusions and, as indicated above, returned a verdict of guilty on all counts.

Appellant now appeals the judgment of conviction by arguing that the trial judge erred (1) in admitting "other acts" evidence pursuant to Fed.R.Evid. 404(b); and (2) in allowing one of the jurors to take notes

---

1. Both the form 500A and its companion form were admitted into evidence as Government's Exhibits 3 and 3A, respectively.

during the trial and to use them during deliberations.

## OTHER BAD ACTS:
## FED.R.EVID. 404(b)

Appellant challenges the admission into evidence of testimony and documents pursuant to Federal Rule of Evidence 404(b).[2] The record reveals that the following evidentiary items were admitted pursuant to Rule 404(b) over appellant's objections:

1. A work registration form[3] used by the Maine Department of Labor to assist applicants in finding employment dated November 6, 1986 and filed in the name of "George M. Oppon." On that form, there is a question requiring a "Yes" or "No" answer regarding United States citizenship which was checked "Yes". This document was identified by Paul Michel, manager of the Lewiston Office of the Maine Department of Labor.[4]

2. Testimony of Jean Stimson, an employee of the Maine Department of Labor, who interviewed appellant regarding his request for job referrals. She testified that her superiors had instructed her to be particularly careful about illegal aliens seeking assistance which, by law, they were not entitled to receive, and that she asked appellant about his citizenship. She testified that appellant stated that he had been born abroad but that he had lived in this country for six years and was now a citizen. The judge characterized the evidence to the jury as falling under the same category as that presented by Paul Michel, whereupon the defense did not renew its already stated objection on Rule 404(b) grounds.[5]

3. Testimony of Paul Libby, General Manager and President of Scotia Company, who identified a job application dated April 1, 1986 as having been prepared by appellant. This form also had been check marked "Yes" in response to the question of United States citizenship.[6]

---

**2.** In relevant part, Rule 404(b) reads as follows:
 **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**3.** The documents listed in this part of the opinion are those exhibits presented with the other acts evidence. They should not be confused with the Maine Department of Labor form 500A or its companion which were evidence of the offense actually charged in the indictment.

**4.** At this point in the proceedings, the trial judge gave the following instruction:
 This is not proof that he did that, it's evidence that at some other time, some other place, he committed an act similar to what he is charged with in Count 5.
 The only way it's admitted, it's admitted for a limited purpose, and the limited purpose enters into the picture, if you first find by evidence that convinces you beyond a reasonable doubt, that the defendant did what he is charged with in [count] 5, and that he answered, "yes", to a question that asked whether he was a U.S. Citizen, if you find that, he disputes that, so you will have to lay this evidence and any evidence like it aside, and not consider it unless you first find that the defendant is guilty as charged and that he an-

swered this question as he answered in count 5.
 This instruction in effect removed the 404(b) evidence from the jury's determination of guilt. That "is contrary to Rule 404(b), which permits the use of other wrongful acts as part of the evidence to be considered by the jury in determining whether the government has proved the defendant guilty beyond a reasonable doubt." *United States v. Munson,* 819 F.2d 337, 346 (1st Cir.1987). Evidence of other wrongful conduct is admissible under Rule 404(b) to show intent, a material element of guilt. However, as we indicated in *Munson,* the incorrect instruction *favors* the defendant and does not constitute reversible error.

**5.** Other than a general Fed.R.Evid. 403 relevancy and/or unfair prejudice, there are two apparent specific grounds for objection, both of which were properly rejected: (1) a hearsay objection, *see* Fed.R.Evid. 801(d)(2)(A); and (2) an inadmissible character evidence objection, *see* Fed.R.Evid. 404(b).

**6.** At this point, the trial judge indicated that this evidence required the same instructions given during Paul Michel's and Jean Stimson's testimony and added:
 It [the evidence] cannot be considered for any purpose unless you find from other evidence that the defendant committed what he is charged with in relation to count 5 and then it can be considered for the limited purpose of, if he did it by mistake or intentionally.

4. An employment application in the name of "George Oppon" dated October 29, 1986 reflecting an affirmative response to the question of United States citizenship. This application was identified as a business record by John Field, who handled job applications for Bauer Haus Industries. An expert witness identified the handwriting on this application as Oppon's.[7]

5. An employment application in the name of Cope which had been prepared by appellant but never submitted to the employer. Cope had retained this document which bore the false social security number provided by appellant. An expert witness identified the handwriting on it as appellant's. This testimony related to the charge that appellant gave Cope a false social security number. The trial judge instructed the jury twice that this document could not be used as evidence of guilt, which was consistent with his prior instructions.[8]

■ There was also the testimony of Andrea St. Pierre, an acquaintance of appellant, in response to defense counsel's questions, that she had seen appellant complete a job application in 1985 and leave the citizenship question therein unanswered. St. Pierre asked appellant why he did not answer the question, whereupon, appellant responded, *inter alia*, that he usually left that portion of the application unanswered because it did not concern him. The trial judge told the jury that this evidence was "testimony of another similar offense and the instruction I gave yesterday applies." This is an apparent reference to the original 404(b) instruction given when the Maine Department of Labor forms were admitted as the first 404(b) evidence. *See supra* note 4.[9]

At the close of the evidence, the trial judge instructed the jury as follows:

Now, there's evidence of other similar acts in this case and an instruction was given you at the time that testimony was introduced, the defendant denies he filled in any box indicating that he was a citizen of the United States, and he also denied that he made any representations for the purpose that we will to [sic] into that Cope and MacAulay [sic] had assigned Social Security numbers whereas in fact they didn't have any.

There was evidence that other applications on behalf of MacAulay and Cope, and it's about those that I need to remind you, that they are nor—the proof is not to be considered by the jury in determining whether the accused in fact committed any act with which he's charged in this indictment ... It may not be considered—that kind of evidence—for any purpose until you first find from other evidence standing alone that the government has established beyond a reasonable doubt that the accused did the particular act charged in the indictment, that he filled in a box indicating that he was—that's what he denies. They claim he did it. The government claims that he did fill in that box. You have to find from other evidence that he did before you can consider these other applications or similar acts and then only for the purpose of determining whether the de-

---

7. The trial judge then instructed the jury that they were not to consider this document as proof of the allegations in count V but rather could only consider it "if by other evidence you [the jury] find beyond a reasonable doubt that he did what he is charged with in count [V]."

8. We note that there was one more item admitted by the trial judge which could arguably fall under Rule 404(b). It consisted of testimony that two other members of the group of Jamaican agricultural workers who came to this country with Cope and Mcaulay later joined them at the apartment that appellant had obtained for them and that appellant helped at least one of the new arrivals get a job and collected money from him for rent. It is unclear from the record before us whether or not this evidence was in fact admitted pursuant to Rule 404(b). However, it appears it could have been admitted pursuant to that rule in relation to counts I and II of the indictment since appellant was not charged with harboring the other two men. Nevertheless, the parties did not address this issue in their briefs and we will not treat it further.

9. The trial court expressly characterized this evidence as 404(b) evidence; however, since it was elicited by defense counsel, who did not object after the statements were made, we will not allow appellant to challenge its admission on appeal. *See Munson,* 819 F.2d at 342.

fendant filled in the box by mistake or for some other reason or whether he did it intentionally.

After the jury had retired to deliberate, defense counsel moved for mistrial arguing that counsel for the government made a closing statement which invited the jury to infer from the "other bad acts" evidence that appellant had acted in conformity therewith. Counsel for the government denied doing this. The trial judge did not find that the government had made such an argument, but nonetheless recalled the jury and instructed them to ignore any argument of counsel for the government regarding the other acts evidence. The judge went on to give the following instruction:

I hope I made it abundantly clear that you have to find from other evidence beyond a reasonable doubt that the defendant filled in the blanks, for example, to indicate that he was an American citizen before you can consider any other applications. And then you can only consider that in connection with the intent as to whether or not, if he did what he did by mistake or innocent reason.

 The decision of the trial court to allow these items into evidence will only be reversed if the district court abused its discretion in applying the following two step test:

As a first step, the judge determines whether the evidence has some 'special' probative value that would show intent, preparation, knowledge, or absence of mistake. As a second step, the judge balances the evidence's probative value against the [unfair] prejudice to the defendant.

*United States v. Flores–Pérez,* 849 F.2d. 1, 4 (1st Cir.1988) (citing *United States v. Scelzo,* 810 F.2d 2, 4 (1st Cir.1987)). This test succinctly combines the foundational requirements of Rule 404(b) with the balancing test of Rule 403.[10] In this case, government counsel invited the judge to make just such a finding when he sought to introduce the evidence of other bad acts

at the very beginning of the trial. During a bench conference, defense counsel objected to the presentation of such evidence at the opening of the trial, which the government proposed to do in order to accommodate a witness. The trial court refused to hear the evidence until the government had presented other testimony and laid a proper foundation. However, it is clear from this conference that the trial court was aware of the proper test for admissibility of such evidence, which, as discussed below, he correctly applied at the appropriate time in admitting the evidentiary items listed above.

Appellant argues that the trial judge could not have ruled that the evidence was admissible to show knowledge, intent or absence of mistake or accident because his defense at trial was simply that he had not committed the charged crime, and, consequently, there was no defense of lack of knowledge or intent, or of mistake or accident to be rebutted with 404(b) evidence. In other words, we are faced with the following question: May other acts evidence be admitted under Rule 404(b) when the defendant's only defense is a general denial of the crime charged in the indictment? We hold that other acts evidence may be admitted when it is probative of an issue other than character even when the defense is a general denial of the charges. *See United States v. Rubio–Estrada,* 857 F.2d 845, 847 (1st Cir.1988) (other acts evidence "is admissible to show 'knowledge' and 'intent,' both controverted issues in the case that are not based on 'bad character.' "); *see also United States v. Bartley,* 855 F.2d 547, 550 (8th Cir.1988) (other acts evidence was admissible because "knowledge, intent and identity were material issues because these are essential elements of the crime and the defense was a general denial."). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material fact *other than character."* *Huddleston v. United States,* —— U.S. ——, 108 S.Ct.

**10.** *See* Fed.R.Evid. 403 ("Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of *unfair* prejudice, * * *," emphasis added).

1496, 1499, 99 L.Ed.2d 771 (1988) (emphasis added).

■ In this case, appellant denied answering the citizenship question in the form 500A. In support of this defense, he elicited the testimony of Ms. St. Pierre that he had told her that he usually left the citizenship question in job-related forms unanswered. *See supra* note 9 and accompanying text. Thus, the government had to prove that appellant had provided the citizenship information in the application. Accordingly, the prosecution presented evidence of other occasions in which appellant filled out job-related forms similar to form 500A. This use of Rule 404(b) passes the *threshold test* of admissibility because the evidence presented was probative of a material fact *other than the character of the defendant*, to wit, it was evidence of identity and of a common scheme or plan. *See, e.g., United States v. Maestas*, 546 F.2d 1177, 1181–82 (5th Cir.1977) (in prosecution for causing certain forged checks to be transported in interstate commerce, other checks were admissible to prove identity and common scheme or plan).

The government also had to prove that appellant had filled out the form 500A knowing that he was giving a false answer and with the intent of identifying himself as a United States citizen because these are essential elements of the crime. *See* 18 U.S.C. § 911. In order to carry their burden of proof on these issues the government successfully sought to introduce the 404(b) evidence. This use of Rule 404(b) also passes the threshold test of admissibility. *See Rubio–Estrada*, at 847; *see also United States v. Jackson*, 714 F.2d 809, 813 (8th Cir.1983) (in prosecution for making false statements in certain invoices, other invoices and accompanying testimony were admissible to show intent and lack of mistake).

■ However, even when the evidence passes this threshold inquiry it is not *per se* admissible because a finding that the evidence is probative of a non-character material fact is only the first part of the test. *See ante* p. 146. Before the evidence may be admitted, the trial judge must further find that its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant. *See* Fed.R. Evid. 403. In exercising the discretion granted by this test, the Court should pay particular attention to the similarity of the other acts with the charged offense, as well as the temporal proximity between them. Although a high degree of similarity and temporal proximity strongly favor admissibility, they could also lead to impermissible character inferences. Accordingly, the court should exclude prior acts evidence, pursuant to Rule 403, when it determines that the possible character inferences that can be drawn from this evidence outweigh its probative value as to noncharacter issues so as to make its admission unfairly prejudicial to the defendant. On the other hand, when the evidence is admitted, the possibility of prejudice should be minimized by specifically instructing the jury on the limited aim of 404(b) proof.

■ The other acts herein concerned are strikingly similar to the charged offense, i.e., they all involve employment-related forms requiring citizenship information. This is not a case where "the probative worth [of the prior acts evidence] toward proving [the defendant's] intent to commit the [charged] offense is difficult to conceptualize." *United States v. Lynn*, 856 F.2d 430, 436 (1st Cir.1988). It is not unfair to infer from the evidence presented that appellant had developed a common scheme or plan of falsely identifying himself as a U.S. Citizen in order to obtain employment and employment-related benefits, and that it was he who completed the citizenship information in the form 500A. It is also important that the appellant's other acts occurred within a year of the charged offense. This also contrasts with the admission of evidence of a prior act that had taken place six years before the charged offense,[11] which in *Lynn* we found to attenuate any possible legitimate probative

---

**11.** Although the *conviction* in *Lynn* was eleven years old at the time of the trial, the underlying acts that led to it occurred in 1974 and the acts that led to the second prosecution occurred in 1980 and 1981.

value that such evidence might have had. *Lynn*, 856 F.2d at 436.

Lastly, the trial judge repeatedly instructed the jury on the limited purpose of the admission of the 404(b) evidence. *See Huddleston*, 108 S.Ct. at 1502 ("the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered for the purpose for which it was admitted."). In fact, when we analyze the judge's instructions at the time the evidence was first admitted, *see supra* note 4, together with those given at the close of the evidence, *ante* at 145, the judge told the jury that they could only consider the evidence as to the issues of intent or the lack of mistake or accident. This precluded the use of the evidence to determine whether or not appellant had filled out the form, which would have been a legitimate use of this evidence. However, any error in these instructions favored appellant and will not lead to reversal of his conviction.

Thus, we find that the trial judge did not abuse his discretion in admitting the other acts evidence in this case.

## NOTE–TAKING BY JUROR

During the trial, appellant's counsel noticed that juror number 3 was taking notes. He objected to the trial court at a bench conference. The judge ruled that note-taking would be allowed. However, in response to a request by the defense, he admonished the juror to "not miss anything." No objection to that instruction was made. At some later point, defense counsel moved for a mistrial because of the note-taking and, alternatively, that the juror be substituted by an alternate. The judge denied both requests.

In his closing instructions to the jury, the trial judge indicated that though notes were permissible, it was the collective recollections of all the jurors that should control their deliberations. Defense counsel requested that if his client was convicted any notes taken by juror number 3 be incorporated into the record. The judge then asked juror number 3 if he had his notes, and the juror replied that he did. In response, the trial judge stated:

> Well, keep them, but be careful in using anybody's notes. They might have missed something when the note was being made. I don't think there's anything wrong with keeping note. I have to myself, sometimes for different reasons than you do, it's the collective recollection of the jury that has to control and not just what's on somebody's notes.

No objection was made to this last instruction.

Appellant argues (1) that the trial judge abused his discretion in permitting this one juror to take notes and (2) that the note-taking instruction given after the close of the evidence should have been given at the time of the original objection.

▮▮▮▮ A trial judge has the discretion to allow jurors to take notes during a criminal trial. *See United States v. Porter*, 764 F.2d 1, 12 (1st Cir.1985) (citing a long list of cases in support of this proposition). His decision to allow such note-taking will only be reversed for abuse of discretion, *id.*, and we find no such abuse here. When the matter was brought to his attention, the trial judge immediately advised the juror to be careful not to miss anything,[12] and no other instruction was requested by the defense at that time. Furthermore, at the close of the evidence, the court instructed the jury on the proper use of notes during deliberations.[13] Therefore, we find that

**12.** This language is subject to two interpretations: (1) that the juror should include in his notes all the evidence presented; or (2) that the juror should not allow the note-taking to distract his attention away from the presentation of evidence. It is this last interpretation that must be emphasized. *See United States v. Rhodes*, 631 F.2d 43, 45–46 (5th Cir.1980). Notes should refresh a juror's recollection of *all* the evidence presented during a trial, not prevent him from getting a full view of the case.

This should, of course be explained to the juror before or during the presentation of the evidence, as the trial judge did in this case.

**13.** *Cf. Rhodes*, 631 F.2d at 46 (although failure to give such an instruction was not held to be reversible error, the court indicated that the better practice is to instruct the jury on the proper use of notes during deliberations).

the trial judge acted properly in this situation.

## CONCLUSION

For the reasons stated above, appellant's conviction is AFFIRMED as to all counts.

COFFIN, Circuit Judge (concurring).

I write separately only to signal my concern that the court's opinion (slip op. at 147) might be construed as authority for admitting Rule 404(b) "other bad acts" evidence whenever intent is in issue. Of course intent is most commonly in issue as an essential element of a crime. If the mere existence of this issue justified the admission of prior bad acts, the general bar against propensity evidence would be swallowed up. *See, e.g., Thompson v. United States,* 546 A.2d 414, 420–23 (D.C.App. 1988). Our precedent, *United States v. Rubio–Estrada,* 857 F.2d 845 (1st Cir. 1988), was a classic case of past acts of dealing in drugs which were relevant to a present defense of lack of *knowledge.* So also was *Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In my view the contested evidence in this case was properly admitted solely under the exception allowing such evidence to show a common pattern or scheme, not because intent is an element of the crime.